UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

**FILED**
**NOV 0 9 2005**
CLERK

| | | |
|---|---|---|
| WILLIAM R. CODY, | ) | CIV. 05-4031-RHB |
| Plaintiff, | ) | |
| vs. | ) | |
| CBM CORRECTIONAL FOOD SERVICES; DENNIS BLOCK; SGT. DUFFY; MS. FRASER; SANDY HUNTER; AL MADSEN; LENORA MOECKEL; CARL PREYER; DR. EUGENE R. REGIER; DARYL R. SLYKHUIS; J. P. SYVERSON; and OTHERS UNKNOWN, all in their individual and official capacities, | ) | MEMORANDUM OPINION AND ORDER |
| Defendants. | ) | |

I.   INTRODUCTION ................................................. 2

II.  BACKGROUND ................................................... 2
     A.   Facts ................................................... 2
     B.   Procedural History ...................................... 4

III. DISCUSSION ................................................... 5
     A.   Summary Judgment Standard ............................... 5
     B.   Qualified Immunity ...................................... 5
     C.   Deliberate Indifference ................................. 6
          1.   Claim One: Denial of Adequate and Sufficient Diet .. 7
          2.   Claim Two: Denial of a Current Diet Order .......... 10
          3.   Claim Three: Denial of Copies of Menus ............. 12
     D.   Discovery ............................................... 13

IV.  CONCLUSION ................................................... 14

I. **INTRODUCTION**

Plaintiff William R. Cody, an inmate at the South Dakota State Penitentiary, filed this action pursuant to 42 U.S.C. § 1983, claiming that defendants acted with deliberate indifference to his medical needs by not feeding him in accordance with his "special diet." In addition, plaintiff has filed a motion to allow discovery prior to the Court's ruling on the issue of qualified immunity. These matters are before the Court on defendants' motion for summary judgment as to the defense of qualified immunity and plaintiff's motion to allow discovery.

II. **BACKGROUND**

A. **Facts**

When a physician believes an inmate is in need of a special diet, the inmate is referred to the dietician. (Defs.' Statement of Undisputed Material Facts ¶ 14.) After meeting with the inmate, the dietician makes a recommendation to the physician regarding the inmate's dietary needs. (Id.) The physician then considers the recommendation and, if accepted, completes a special diet order. (Id.) Once a special diet has been ordered, the dietician creates a set of daily menus for the inmate in accordance with his special diet and forwards it to the kitchen for implementation. (Id.)

Plaintiff suffers from diabetes, hypertension, and high cholesterol. (Compl. ¶ 30.) Defendant Eugene M. Regier, M.D., has prescribed medication and a special diet to plaintiff to treat these conditions. (Id. ¶¶ 31-32.) On September 28 and October 19, 2004, Dr. Regier met with plaintiff, and on October 19, he ordered that he see a dietician in order to obtain a special diet for his diabetes and hypertension. (Id. ¶ 38.) The South Dakota State Penitentiary, however,

2

does not employ a dietician; instead, a registered dietician employed by defendant CBM Correctional Food Services works at the penitentiary. (Id. ¶ 39.)

On November 16, 2004, plaintiff met with defendant Lenora Moeckel, the dietician for defendant CBM Correctional Food Services. (Id. ¶ 42.) Moeckel prepared a diet order specifying what plaintiff could eat. (Id. ¶ 45.) In her order, Moeckel recommended that plaintiff be placed on a low sodium hypertension diet and a consistent carbohydrate diet, with a daily calorie intake of 2,500. (Id. ¶ 42.) On that same date, Dr. Regier accepted the recommendation and prescribed plaintiff with a 30-day special diet order. (Id. ¶¶ 42, 74.) Moeckel prepared daily menus for plaintiff's special diet on a 28-day cycle. (Id.) Plaintiff was not supplied with copies of the daily menus. (Id. ¶46.) Although he was promised the special diet menus would be provided per his request (Id. ¶¶ 45-46, 84), on December 2, 2004, a prison official notified plaintiff that he would not receive copies of the daily menus (Id. ¶ 89).

On December 24, 2004, plaintiff asked to renew his special diet order. (Id. ¶ 78.) Officials told plaintiff that he had to go to sick call to renew his order. (Id.) This upset plaintiff because it costs five dollars per visit to go to sick call. (Id. ¶ 78(a).) Plaintiff attended his monthly diabetic clinic on January 7, 2005, where he was again told that he had to go to sick call to renew his special diet order. (Id. ¶ 80.) On January 8, 2005, plaintiff went to sick call where his special diet was extended until March 10, 2005. (Id. ¶ 81.) He was then told by defendant Sandy Hunter that the order was good for 90 days, that only a physician could renew his order, and that it could not have been renewed at his diabetic clinic on January 7. (Id.) On February 28, 2005, plaintiff was called to health services for a chronic care clinic. (Id. ¶ 99.) At this meeting, all of plaintiff's medications and orders were renewed for another six months. (Id.)

3

On May 26, 2005, Moeckel and defendant Carl Preyer, a CBM on-site manager, met with plaintiff to address his concerns about the number of eggs in his diet and their effect on his cholesterol. (Defs.' Statement of Undisputed Material Facts ¶ 22.) Before this date, Moeckel was unaware that plaintiff had any concerns about his cholesterol levels. (Id.) At this meeting it was learned that plaintiff thought he was receiving a low cholesterol diet in addition to his hypertension and consistent carbohydrate diet. (Id.) Moeckel explained to plaintiff that he had not been on a low fat or cholesterol diet. (Id.) On that same date, in congruence with Moeckel's recommendation, a new diet order was written for a 2,500 calorie heart healthy diet set to expire on May 26, 2006. (Id.)

A large part of the special diet meals prepared for plaintiff overlap with the meals served to the other inmates, even though plaintiff's food tray would be sitting apart from the service line. (Compl. ¶ 47.) In addition, although plaintiff had not yet been prescribed to the heart healthy diet at the time of his complaint, he was receiving over ten eggs each week (Id. ¶ 48), which exceeds the recommended number of eggs for an individual with high cholesterol (Id. ¶¶ 48-50). He has not been provided with any fish in his diet to combat his medical problems (Id. ¶ 53), despite the fact that other inmates receive two servings of tuna per week as part of the penitentiary's kosher diet (Id. ¶ 54). Furthermore, plaintiff has not been served an assortment of vegetables. (Id. ¶ 59.)

B.  **Procedural History**

Plaintiff brought suit against defendants on February 28, 2005, claiming that defendants have been deliberately indifferent to plaintiff's medical needs and special diet. Plaintiff's cause of action alleges three theories of liability, which are as follows: (1) defendants have denied

plaintiff an adequate diet necessary to treat his diabetes, hypertension, and cholesterol; (2) defendants have denied plaintiff a current diet order; and (3) defendants have denied plaintiff access to copies of the daily menus used to prepare plaintiff's special diet meals. On July 14, 2005, following this Court's Order staying discovery, defendants moved for summary judgment on their affirmative defense of qualified immunity.

### III. DISCUSSION

#### A. Summary Judgment Standard

Upon a motion for summary judgment, the Court is required to view the facts in a light most favorable to the nonmoving party and accept as true those facts put forward by the nonmoving party that are amply supported in the record. Wright v. Rollette County, 417 F.3d 879, 884 (8th Cir. 2005); Wilson v. Lawrence County, 260 F.3d 946, 951 (8th Cir. 2001); Tlamka v. Serrell, 244 F.3d 628, 632 (8th Cir. 2001). "'In the event that a genuine dispute exists concerning predicate facts material to the qualified immunity issue, the defendant is not entitled to summary judgment on that ground.'" McClendon v. Story County Sheriff's Office, 403 F.3d 510, 520 (8th Cir. 2005) (quoting Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000)).

#### B. Qualified Immunity

"Qualified immunity protects a government official from liability in a § 1983 claim unless his or her conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known." Pool v. Sebastian County, 418 F.3d 934, 942 (8th Cir. 2005) (citing Meloy v. Bachmeier, 302 F.3d 845, 848 (8th Cir. 2002)). There are two steps when analyzing qualified immunity issues. The first inquiry is whether plaintiff's asserted facts show

the official's conduct violated a statutory or constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001); Wright, 417 F.3d at 884. If the answer to the initial query is no, the Court will grant qualified immunity. Saucier, 533 U.S. at 201, 121 S. Ct. at 2156. If yes, the Court must then address the second inquiry of "whether the right was clearly established," Id.; that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted," Id. at 202, 121 S. Ct. at 2156. See Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 1699, 143 L. Ed. 2d 818 (1999).

### C.     Deliberate Indifference

Claiming defendants' conduct violated a constitutional right, plaintiff argues that he is being "denied a prescribed diet necessary to preserve his life." (Pl.'s Br. in Opposition to Defs.' Mot. for Summ. J. at 1.) Specifically, plaintiff maintains that "defendants have been deliberately indifferent to his serious medical needs by denying him (1) a necessary and prescribed diet . . . ; (2) a current diet order . . . ; and (3) copies of menus allegedly prepared to satisfy the prescription for [plaintiff's] diet, which are necessary to prove [plaintiff] is not being served an adequate and sufficient diet . . . ." (Id. at 3.) According to his allegations, all of plaintiff's claims stem from defendants' deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment's proscription of cruel and unusual punishment. (Compl. ¶¶ 102-104.)

"To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, an inmate must prove that he suffered from one or more objectively serious medical needs, and that prison officials actually knew of but deliberately disregarded those needs." Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999). Deliberate indifference may be shown by prison officials "'who intentionally deny or delay access to medical care or

6

intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'" Id. (quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997) (following Estelle v. Gamble, 429 U.S. 97, 104-06, 97 S. Ct. 285, 291-92, 50 L. Ed. 2d 251 (1976))). See Wilson v. Seiter, 501 U.S. 294, 297-99, 111 S. Ct. 2321, 2323-24, 115 L. Ed. 2d 271 (1991). Additionally, "'disagreement with treatment decisions does not rise to the level of a constitutional violation.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995)).

### 1.   Claim One: Denial of Adequate and Sufficient Diet

Plaintiff first claims that he "was and continues to be denied an adequate and sufficient diet necessary to treat his diabetes, hypertension, and excessive cholesterol," due to defendants deliberate indifference to his serious medical needs. (Compl. ¶ 102.) Because plaintiff has been diagnosed with diabetes, hypertension, and high cholesterol, it is undisputed that plaintiff suffers from one or more objectively serious medical needs. It is further undisputed that defendants knew of plaintiff's maladies. Therefore, the question then becomes whether defendants deliberately disregarded plaintiff's serious and known medical problems.

On September 28 and October 19, 2004, plaintiff met with defendant Dr. Regier and obtained a referral on October 19 directing him to consult with the dietician, defendant Moeckel. At their meeting, Dr. Regier's referral only concerned plaintiff's diabetes and hypertension. (Def. Dr. Regier's Ex. #1.) No mention was made by plaintiff concerning his cholesterol at this time. After plaintiff met with Moeckel on November 16, 2004, Moeckel submitted a recommendation to Dr. Regier, whereby a low sodium and consistent carbohydrate diet

7

specifically designed for diabetes and hypertension was prescribed. (Def. Dr. Regier's Ex. #2.) As such, plaintiff was provided with a special diet in accordance with a diagnosis of diabetes and hypertension.

In spite of his prescribed diet, plaintiff further asserts that defendants were deliberately indifferent to plaintiff's medical needs by denying him the opportunity to meet with the dietician for almost fifty days. (Compl. ¶ 41.) Because of this delay, plaintiff filed grievances with prison officials related to his diet. (Id.) However, even though a delay in medical treatment may constitute a violation of clearly established law, plaintiff offers no proof supported in the record that the delay's effect was sufficiently serious or that defendants acted deliberately. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997). "When an inmate alleges that a delay in medical treatment constituted a constitutional deprivation, 'the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.'" Id.

Here, plaintiff's exhibits indicate the following: that defendants responded to plaintiff's administrative remedy requests relating to his special diet; that on May 1, 2003, plaintiff was initially prescribed a special diet to combat his diabetes and lower his salt intake; that plaintiff did not specifically request a dietician during his meeting with Dr. Regier on September 28, 2004; that plaintiff received substantial treatment and consultation throughout his September 28 meeting with Dr. Regier; that plaintiff was ordered to return to Dr. Regier's care on October 19, 2004, once plaintiff's test results came back; that on October 19, 2004, plaintiff was ordered to see a dietician; that by November 3, 2004, Dr. Regier had contacted defendant CBM about meeting with the dietician; that the delay in implementing his current diet was due to the new and completely different recipe book and menu cycle created for him by the dietician, in contrast to

his May 1, 2003, diet order; and, that plaintiff's November 16, 2004, diet order was implemented until May 26, 2005. In addition, plaintiff has been prescribed various medications to address his ailments, and no evidence demonstrates that plaintiff's treatment has regressed. In fact, at plaintiff's October 19 check-up with Dr. Regier, it was noted that plaintiff's diabetic condition was "within relatively acceptable areas." (Pl.'s Ex. #138.) At the October 19 medical visit, moreover, plaintiff's concerns primarily revolved around his sodium intake and not his blood sugar levels. (Id.)

On May 26, 2005, plaintiff met with defendants Moeckel and Preyer to discuss his concerns about the number of eggs in his diet and excessive cholesterol. At the time of this meeting, neither Moeckel nor Preyer were privy to plaintiff's worries about his cholesterol levels. Dr. Regier, however, had diagnosed plaintiff with high cholesterol problems in as early as January 2002. Therefore, plaintiff again argues that defendants' delay in prescribing and implementing a diet conforming to his dietary needs amounted to deliberate indifference. In the alternative, plaintiff asserts that evidence of defendants' May 26 conduct is irrelevant and inadmissible because it occurred after the complaint was filed.

Despite plaintiff's conclusory allegations, he offers no "'verifying medical evidence' that the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury in this case." Dulany v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997) (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995)). Although the allegation that plaintiff suffered from diabetes, hypertension, and high cholesterol is well documented, plaintiff's medical records reveal that he was consistently treated several times throughout any given time period. In

addition, following Dr. Regier's medical findings, plaintiff progressed in his treatment. (Pl.'s Ex. #121, #136, and #138.) On May 1, 2003, plaintiff was placed on a low-concentrated carbohydrate diet to fight his "non-insulin-dependent diabetes" and "borderline high triglyceride levels." (Id.) Then, in July 2003, Dr. Regier noted that plaintiff's blood sugar levels have been "excellent" and that his fasting blood sugars "have ranged within essentially normal limits." (Pl.'s Ex. #124.) Up until May 26, 2005, there were no reports concerning plaintiff's diet as it related to cholesterol, except that it was "within normal limits" or "within the reference range." (Pl.'s Ex. #136 and #138.) Furthermore, during the time frame in which plaintiff's complaint centers around, he has at all times been eating some sort of special diet, receiving treatment, and taking prescribed medications. Although plaintiff suffers from one or more objectively serious medical problems that were known to defendants, plaintiff fails to show that defendants deliberately disregarded those needs. Accordingly, plaintiff's first claim is devoid of any material factual dispute concerning defendants' alleged deliberate indifference to plaintiff's medical needs.

### 2. Claim Two: Denial of a Current Diet Order

Plaintiff next asserts that he was "denied a current diet order . . . ." (Compl. ¶ 103.) The Court construes plaintiff's complaint to mean that since plaintiff was denied the opportunity to renew his special diet order without having to go to sick call, defendants were deliberately indifferent to his serious medical needs.

The crux of plaintiff's claims appears to revolve around the expiration date of his November 16 special diet prescription. He complains that his diet order should have been extended without any delay. However, at plaintiff's chronic care clinic on December 10, 2004,

plaintiff informed a physician's assistant that he was concerned about the then-current November 16 diet plan. (Pl.'s Ex. #141.) In response, the physician's assistant stated that it would be best for plaintiff to meet with the dietician and defendant Preyer from CBM to review the diet order. (Id.) The assistant then reordered plaintiff's other medications even though they were not expired at that point. (Id.)

Although the assistant's decision to hold off on renewing or changing plaintiff's diet order may have been negligent, "prison doctors remain free to exercise their independent medical judgment."* Dulany, 132 F.3d at 1239 (citing Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996)); see Estelle, 429 U.S. at 105-06, 97 S. Ct. at 291-92. There is no indication in the record that plaintiff's medical needs were deliberately disregarded. At the December 10 clinic, plaintiff indicated that he had "no complaints about urination, thirst, or appetite" and denied that he experienced "any nausea or vomiting." (Pl.'s Ex. #141.) See, e.g., Roberson, 198 F.3d at 647 (listing diabetic symptoms). Thus, due to the mild nature of plaintiff's diabetes, an excessive risk was not posed to plaintiff's health. See Dulany, 132 F.3d at 1239 (quoting Long, 86 F.3d at 765). Also, plaintiff was still being administered oral medications to assist with any adverse symptoms brought on by his condition. (Pl.'s Ex. #141.)

Subsequently, on December 24, 2004, plaintiff sought to renew his special diet prescription through an informal written request placed in the penitentiary's health service in-box. However, plaintiff was informed that prescription renewal requests would no longer be accepted in this manner; rather, inmates were required to report to sick call, which was open each

---

\* It should be further noted that even though the physician's assistant was a named defendant at one time, he has since been dismissed from this action. (Docket #17.)

morning at seven o'clock, and pay a five dollar co-pay. At his diabetic clinic on January 7, 2005, plaintiff was again informed that he must attend sick call for a diet renewal. Finally, on January 8, 2005, plaintiff reported to sick call where his diet was extended to March 10, 2005.

While a delay did exist, plaintiff cannot "prove the delay created an acute or escalating situation." Muhammad v. King, 21 F.3d 432, 1994 WL 150385, *1 (8th Cir.) (following Givens v. Jones, 900 F.2d 1229, 1233 (8th Cir. 1990)). In this instance, moreover, plaintiff cannot contend that defendants had anything to do with denying plaintiff a current diet order. He was adequately and repeatedly informed on how to obtain a renewed prescription. Plaintiff was provided with ample opportunities to utilize sick call to renew his diet plan. Accordingly, because plaintiff has not placed any predicate facts as to defendants' deliberate indifference in dispute, his second claim fails.

### 3. Claim Three: Denial of Copies of Menus

Plaintiff finally argues that he was and continues to be denied copies of menus prepared by the dietician, Moeckel, which prevents plaintiff from knowing specifically what has been prescribed to treat his medical issues. (Compl. ¶ 104.) There is no dispute that defendants initially agreed to furnish plaintiff with copies of the prescribed diet menus. (Def. CBM's Answer ¶ 35.) It is also undisputed that defendants subsequently advised plaintiff that he would not be supplied with copies of the menu and that no inmates were entitled to individual copies of menus. (Id.) Despite these findings, defendants did not deprive plaintiff of a constitutional or statutory right by refusing to provide copies of menus. Rogers v. Scurr, 676 F.2d 1211, 1213-14 (8th Cir. 1982).

In Rogers, the Eighth Circuit Court of Appeals held that it is "all the more important that federal courts abstain from imposing strict standards of conduct . . . on prison officials in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief." Id. at 1214. There, the Eighth Circuit reversed a district court's decision requiring prison officials to supply special diet menus to Muslim inmates. Id. at 1213-14. Although the prisoners in Rogers retained a constitutional protection under the First Amendment's Free Exercise Clause, the Court declared that prison officials "must have wide latitude within which to make appropriate limitations." Id. at 1215.

For this Court to order the South Dakota State Penitentiary to supply plaintiff, and in turn every inmate prescribed a special diet, with a copy of the daily meal menu would produce too much interference with prison administration and leave too little discretion with prison officials. See, e.g., id. at 1213-15. Moreover, unlike the Rogers decision, plaintiff makes no showing and points to no authority that he is constitutionally or statutorily entitled to copies of his special diet menus. Id. at 1214. For the foregoing reasons, plaintiff's final claim is without merit and hereby denied.

**D.     Discovery**

On June 13, 2005, this Court Ordered that "discovery shall not proceed until the affirmative defense of qualified immunity is resolved . . . ." On July 29, 2005, after defendants filed their brief in support of summary judgment, plaintiff moved for an order allowing him to conduct discovery prior to the Court ruling on defendants' motion. Pursuant to Federal Rule of Civil Procedure 56(f), plaintiff argues that he is unable to respond to defendants' motion because there are essential facts unavailable to him in order to justify opposition. (Pl.'s Br. in Support of

13

Mot. to Allow Disc. at 2-3.) Therefore, plaintiff requests that the Court either refuse defendants' motion for summary judgment or grant a continuance to allow discovery. (Id. at 3.)

For government officials, "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,'" Saucier, 533 U.S. at 201, 121 S. Ct. at 2156 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815, 86 L. Ed. 2d 411 (1985)), such as complying with overreaching discovery requests, Harlow v. Fitzgeral, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 2737-38, 73 L. Ed. 2d 396 (1982). In asking the Court to refuse defendants' motion or grant a continuance, plaintiff must file an affidavit showing "what specific facts further discovery might unveil." Dulany, 132 F.3d at 1238 (citation omitted). Here, plaintiff merely asserts as a conclusory statement that answers to his interrogatories "are essential and necessary . . . in order to prepare a complete response to defendants' motion for summary judgment . . . ." (Pl.'s Decl. in Support of Mot. to Allow Disc. at 2.) He fails, however, to articulate what particular evidence or facts further discovery might uncover to allow him to adequately respond to defendants' motion. See id. Moreover, hundreds of pages of documents have been produced for the Court's review, including plaintiff's complete medical records, and affidavits from plaintiff's physician and dietician averring that plaintiff received appropriate and adequate medical care. As such, plaintiff's motion to allow discovery is denied.

### IV. CONCLUSION

Because the plaintiff's asserted facts do not show that the defendant prison officials' conduct violated a clearly established constitutional or statutory right, the affirmative defense of qualified immunity bars plaintiff's claims. Furthermore, the privilege of qualified immunity is an

immunity from suit and its concomitant burdens, thereby precluding plaintiff's motion to allow further discovery. Accordingly, it is hereby

ORDERED that defendants' motion for summary judgment (Docket #43) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to allow discovery (Docket #49) is denied.

Judgment is issued in favor of the defendants CBM Correction Food Services, Dennis Block, Sgt. Duffy, Ms. Fraser, Sandy Hunter, Al Madsen, Lenora Moeckel, Carl Preyer, Dr. Eugene R. Regier, Daryl R. Slykhuis, and J.P. Syverson.

Dated this 9th day of November, 2005.

BY THE COURT:

RICHARD H. BATTEY
UNITED STATES DISTRICT JUDGE